UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINCOLN D. FINLEY,<br><br>    Plaintiff,<br><br>    v.<br><br>TRANSAMERICA LIFE INSURANCE COMPANY, et al.,<br><br>    Defendants. | Case No. 15-cv-00678-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 12 |

## INTRODUCTION

Pro se plaintiff Lincoln Finley accuses defendant Transamerica Premier Life Insurance Company ("Transamerica") of failing to pay the life insurance policy benefit owed to his mother upon his father's death, thereby breaching the express terms of the policy and the implied covenant of good faith and fair dealing. Neither Finley nor his mother notified Transamerica of his father's death, a condition precedent to Transamerica's payment. Lacking such notice, Transamerica escheated the policy proceeds to the California State Controller as required by law. Finley later obtained the proceeds from the Controller. He states no plausible claim against Transamerica, and this case is DISMISSED.

## BACKGROUND

Finley alleges that Transamerica issued a life insurance policy listing his father as the insured and his mother as the sole beneficiary in 1964. Compl. ¶¶ 5-6, Ex. A (Dkt. No. 1); Puig

Decl. Ex. A (Dkt. No. 13-1).[1] In 1987, his father died. *Id.* ¶ 7. Finley states that his mother "was not made aware" of the policy at that time and did not receive the policy benefit. *Id.* ¶¶ 7, 15. He also asserts that Transamerica did not check the Social Security Death Index[2] at the time of his father's death or at any time thereafter. *Id.* ¶ 7.

Finley learned of the policy at an unspecified time after his father's death, "when the states did their shakedown on insurance companies, who were failing to pay heirs after the death of their love[d] ones." *Id.* ¶ 8. He contends that he became entitled to the benefits owed under the policy when his mother died in 2004 without having been paid by Transamerica. *Id.* ¶ 22. Finley contacted Transamerica on or around November 13, 2014 seeking payment of the policy benefits plus $75,000 for "unconscionable insurance practices," but Transamerica refused to pay. *Id.* ¶¶ 9-11. He states that Transamerica had already "submitted payment to [the] California State Controller." *Id.* ¶ 9; *see also* Opp. at 3.[3]

Finley filed this action on February 13, 2015, alleging two causes of action against Transamerica for breach of contract and breach of the implied covenant of good faith and fair

---

[1] Finley purports to attach to his complaint a copy of the life insurance policy issued to his father. Compl. ¶¶ 5-6, Ex. A. Transamerica asserts, and Finley does not dispute, that the document attached to the complaint is not in fact Finley's father's policy, but rather his father's policy application. Mot. at 5 n.4; *see also* Compl. Ex. A ("Application for Weekly Premium Industrial Insurance"). Transamerica requests judicial notice of what it describes as a "specimen copy" of the actual policy form. Mot. at 5 n.4; Puig Decl. Ex. A. Finley does not oppose the request. Transamerica states that its "practice with regard to assumed business, such as the policy issued to [Finley's father], is to keep a specimen copy of the policy form reflecting the terms and conditions of coverage offered under that policy rather than retaining each individual policy." Puig Decl. ¶ 2 (Dkt. No. 13). Because this document is central to the allegations in the complaint and Finley does not dispute its authenticity, I will take judicial notice of it. *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005) (incorporation by reference doctrine extends "to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint"); *see also Feingold v. John Hancock Life Ins. Co. (USA)*, No. 13-cv-10185, 2013 WL 4495126, at *2 (D. Mass. Aug. 19, 2013) (taking judicial notice of specimen copy of life insurance policy referenced in plaintiffs' complaint, where policy was "central to his claims, and [he] has not disputed its authenticity").

[2] The Social Security Death Index ("SSDI") is often referred to as the Death Master File.

[3] Finley does not specifically allege when Transamerica "submitted payment to [the] California State Controller." *See* Compl. ¶ 9. However, other allegations in his complaint, as well as his opposition brief, indicate that Transamerica had already done so when Finley contacted it about his father's policy. *See, e.g.,* Opp. at 3.

2

dealing. Compl. ¶¶ 13-23. I heard argument on June 10, 2015. Dkt. No. 23.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In considering whether a claim satisfies this standard, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, the court need not accept as true "allegations that contradict matters properly subject to judicial notice." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks omitted). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.*

## DISCUSSION

### I. FIRST CAUSE OF ACTION: BREACH OF CONTRACT

The elements of a claim for breach of contract under California law are: (1) the existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach. *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008); *accord Buschman v. Anesthesia Bus. Consultants LLC*, No. 13-cv-01787-EMC, 2014 WL 1911430, at *5 (N.D. Cal. May 13, 2014). Finley alleges that Transamerica breached the terms of his father's life insurance policy by "fail[ing] to pay the policy benefit upon the death of [his father] to [his mother] in 1987." Compl. ¶ 15. Transamerica contends that Finley fails to state a claim for breach of contract because he does not allege that his mother submitted "due proof of death," as required under the policy. Mot. at 5-7.

Transamerica is right. "An insurance policy is, fundamentally, a contract between the insurer and the insured;" accordingly, a court must "look to the language of that contract to

determine the obligations which the parties have assumed." *Stein v. Int'l Ins. Co.*, 217 Cal. App. 3d 609, 613, (1990); *accord Abifadel v. Cigna Ins. Co.*, 8 Cal. App. 4th 145, 159 (1992). "Interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation." *MacKinnon v. Truck Ins. Exch.*, 31 Cal.4th 635, 647 (2003). Under California law, "the mutual intention of the parties at the time the contract is formed governs interpretation. Such intent is to be inferred, if possible, solely from the written provisions of the contract." *Id.* at 647-48 (internal quotation marks and citations omitted). "The clear and explicit meaning of these provisions, interpreted in their ordinary and popular sense, unless used by the parties in a technical sense, or [unless] a special meaning is given to them by usage, controls judicial interpretation." *Id.* (internal quotation marks and citations omitted).

In the paragraph titled "Death Benefit," Finley's father's policy states that "[i]n the event of the death of the Insured . . . , the Company will pay the Amount of Insurance specified in the Schedule to the Beneficiary designated herein *upon receipt of due proof of death and upon surrender of this policy*." Puig Decl. Ex. A (emphasis added). The paragraph titled "Accidental Death Benefit" likewise provides that "the Company will pay an additional death benefit . . . *upon receipt of due proof of accidental death*." *Id.* (emphasis added). The plain import of this language is that Transamerica was not obligated to pay Finley's mother the policy benefit until she provided "due proof" of Finley's father's death. Finley does not allege that she did so. To the contrary, he claims that she was unaware of the policy when his father died, and that he did not learn of the policy's existence until long after that time. *See* Compl. ¶¶ 7-8. These allegations do not support a plausible inference that Transamerica breached the policy's terms by failing to pay Finley's mother upon his father's death.

*Paulfrey v. Blue Chip Stamps*, 150 Cal. App. 3d 187 (1983), cited by Transamerica, supports this conclusion. There, the trial court granted a directed verdict for the plaintiff on her claim of bad faith refusal to pay insurance benefits, despite evidence in the record indicating that she had failed to comply with the claims procedure set out in the policy. The California Court of Appeal reversed:

4

> [A]n insurance contract is a bona fide contract between the insurer and the insured. As such, an insured has certain obligations to perform pursuant to the contract before an insurer has a duty to pay benefits thereunder . . . Insurance contracts legitimately call for the filing of a claim, complete with proof of loss.  It would seem reasonable that any responsibility to investigate on an insurer's part would not arise unless and until the threshold issue as to whether a claim was filed, or a good faith effort to comply with [the] claims procedure was made, has been determined.  In no event could an insured fail to keep his/her part of the bargain in the first instance, and thereafter seek recovery for breach of a duty to pay seeking punitive damages based on an insurer's failure to investigate a nonclaim . . . To keep her part of the bargain, [plaintiff] here was obligated under [her insurance policy] to furnish written notice of the claim to [defendants] together with written proof covering the occurrence and extent of the loss . . . [U]nless and until [plaintiff] satisfied both requirements, or substantially complied therewith, [defendants] were under no obligation to investigate [her] claim.

*Id.* at 199-200; *see also California Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal. App. 3d 1, 57 (1985) ("[W]ithout actual presentation of a claim by the insured in compliance with [the claims procedure] contained in the policy, there is no duty imposed on the insurer to investigate the claim.").  While the cause of action at issue in *Paulfrey* was breach of the implied covenant of good faith and fair dealing, not breach of contract, the case reflects the general rule that an insurer's duties under a policy may depend on the insured's performance of its own contractual obligations, including performance of the applicable claims procedure.  Finley's failure to allege any level of compliance with the claims procedure set out in his father's policy prevents him from stating a plausible breach of contract claim here.

Finley's counterarguments do not call for a different result.  His opposition brief does not squarely address any of the grounds for dismissal raised in Transamerica's motion.  *See* Opp. at 1-7.  His principal contention in support of his breach of contract claim appears to rely on California Insurance Code section 552, which provides that where an insurance policy requires "preliminary proof of loss," the insured is not required to produce "such proof as would be necessary in a court of justice."  Cal. Ins. Code § 552.  Rather, the insured need only "give the best evidence in his power at the time."  *Id.*  This statute does not help Finley.  The issue in this case is not whether Transamerica received sufficient proof of death, but whether Transamerica received any proof of death at all.  While section 552 allows an insured to produce only "the best evidence in his power at the time," no reasonable interpretation of the statute allows an insured to produce no evidence

5

whatsoever – which, according to the complaint, is what happened here.

Finley's breach of contract claim does not appear to be based on Transamerica's refusal to pay him upon his demand on or around November 13, 2014. *See* Compl. ¶¶ 13-17. But to the extent that it is, the claim still fails. Finley alleges that by the time he contacted Transamerica regarding his father's policy, Transamerica had already "submitted payment to [the] California State Controller." *Id.* ¶ 9; *see also* Opp. at 3. He appears to mean that Transamerica had already escheated the policy proceeds to the state. *See, e.g.*, Opp. at 3. Finley does not allege that this was improper, or that Transamerica was obligated to pay him the policy benefit despite having already escheated it. Moreover, under California Code of Civil Procedure section 1560(a), Transamerica is largely shielded from liability for claims respecting escheated property:

> Any person who pays or delivers escheated property to the Controller under this chapter and who, prior to escheat, if the person's records contain an address for the apparent owner, which the holder's records do not disclose to be inaccurate, has made reasonable efforts to notify the owner by mail or, if the owner has consented to electronic notice, electronically, . . . that the owner's property . . . will escheat to the state, is relieved of all liability to the extent of the value of the property so paid or delivered for any claim which then exists or which thereafter may arise or be made in respect to the property.

Cal. Civ. Proc. Code § 1560(a). Finley does not allege that Transamerica failed to comply with the section 1560(a) notice requirement before escheating the policy proceeds, or that the section is otherwise inapplicable here.[4]

Transamerica's motion to dismiss Finley's first cause of action for breach of contract is GRANTED.

---

[4] Finley's allegations strongly indicate that the proper place for him to seek payment of any funds from his father's policy to which he is entitled is from the California State Controller, not from Transamerica. *See* Cal. Civ. Proc. Code § 1540 ("Any person . . . who claims to have been the owner . . . of property paid or delivered to the Controller under this chapter may file a claim to the property or to the net proceeds from its sale . . . For purposes of filing a claim pursuant to this section, 'owner' means the person who had legal right to the property prior to its escheat [and] his or her heirs . . ."). At oral argument, Finley admitted that he has already contacted the Controller regarding the policy, and that the Controller has since delivered to him the escheated funds. Because I find that Finley's allegations are defective for other reasons, I do not address what impact, if any, that admission has on Finley's ability to state a claim against Transamerica.

6

## II.   SECOND CAUSE OF ACTION: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Finley's second cause of action for breach of the implied covenant of good faith and fair dealing must also be dismissed. "California law, like the law in most states, provides that a covenant of good faith and fair dealing is an implied term in every contract." *Chodos v. West Publishing Co.*, 292 F.3d 992, 996 (9th Cir. 2002). The implied covenant "imposes upon each party a duty of good faith and fair dealing in the performance of the contract such that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Storek & Storek, Inc. v. Citicorp Real Estate Inc.*, 100 Cal. App. 4th 44, 55 (2002). Finley accuses Transamerica of breaching the implied covenant in four ways: (1) by failing to pay the policy benefit upon his father's death; (2) by "holding [the policy benefit] for approximately 28 years without compensating the family for damages;" (3) by failing to "check against the [SSDI] periodically to ensure payment" of the policy benefit; and (4) by "continuing to accept payment after [his father's] death." Compl. ¶ 21.

"[W]hen benefits are due an insured, delayed payment based on inadequate or tardy investigations, oppressive conduct by claims adjusters seeking to reduce the amounts legitimately payable, and numerous other tactics may breach the implied covenant because they frustrate the insured's right to receive the benefits of the contract." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 36 (1995) (internal quotation marks omitted). However, "a bad faith claim cannot be maintained unless policy benefits are due." *Id.* "Absent that contractual right . . . the implied covenant has nothing upon which to act as a supplement, and should not be endowed with an existence independent of its contractual underpinnings." *Id.* (internal quotation marks omitted); *see also Manzarek*, 519 F.3d at 1034 ("California law is clear . . . that without a breach of the insurance contract, there can be no breach of the implied covenant of good faith and fair dealing."). Finley's first and second theories fail for the same reason as Finley's breach of contract claim: no policy benefits were due because Finley does not allege that his mother submitted "due proof of death" as required to trigger Transamerica's obligation to pay under the policy.

The third theory, regarding Transamerica's alleged failure to check the SSDI, is unsupported by the actual terms of the policy. Finley alleges that "[i]mplied in the . . . policy is [Transamerica's] obligation to . . . chec[k] the [SSDI] periodically, to avoid unnecessary delays" in the payment of policy benefits. Compl. ¶ 20. But Finley alleges no plausible basis – either intrinsic or extrinsic to the policy – for implying this requirement.[5] The only relevant portion of the policy brought to my attention by either party states that Transamerica must pay the policy benefit "upon receipt of due proof" of death or accidental death. *See* Puig Decl. Ex. A. As the court in *Andrews v. Nationwide Mut. Ins. Co.*, 2012 WL 5289946 (Ohio Ct. App. 2012), observed, "[t]he ter[m] 'receipt' . . . demonstrate[s] [the insurer's] passive role in establishing an insured party's proof of death; [it] do[es] not connote an obligation to procure such information." *Id.* at *4 (affirming dismissal of plaintiffs' claim that insurer breached the implied covenant of good faith and fair dealing by failing to search the Death Master File to independently determine whether its insureds had died). A finding that Transamerica was obligated to "solicit or gather information" of Finley's father's death would thus be "contrary to the terms [of the] policy," *id.*, and, hence,

---

[5] In his opposition brief, Finley appears to argue that a requirement to search the SSDI is properly implied into the policy as a result of a settlement agreement between Transamerica and the California State Controller arising from a multi-state unclaimed property audit. *See* Opp. at 4-5. Transamerica contends that Finley references the settlement agreement in his complaint, and submits a copy for judicial notice under the incorporation by reference doctrine. Mot. at 9 n.5; Puig Decl. Ex. B (Dkt. No. 13-2). It is not clear to me that the complaint actually references the settlement agreement. The relevant allegation states only: "Plaintiff learned of the policy when the states did their shakedown on insurance companies, who were failing to pay heirs after the death of their love[d] ones." Compl. ¶ 8. If Finley wants me to consider whether a settlement agreement between Transamerica and the California State Controller (or some other contractual agreement or authority apart from his father's life insurance policy) required Transamerica to search the SSDI, he must include appropriate supporting allegations in his complaint. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("[W]hen the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), review is limited to the complaint.") (internal quotation marks and alterations omitted).

"independent of [any] contractual underpinnings," *Waller*, 11 Cal.4th at 36.[6]

Finley's last theory is that Transamerica breached the implied covenant by "continuing to accept payment after [his father's] death." Compl. ¶ 21. This theory is deficient because, even assuming it provides a viable basis for liability, it lacks "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678. Finley offers no explanation of what payment Transamerica continued to accept, for how long Transamerica continued to accept it, or why such conduct amounts to a breach of the implied covenant. Absent additional supporting details, the theory does not satisfy the standards for notice pleading under Federal Rule of Civil Procedure 8(a).

Transamerica's motion to dismiss Finley's second cause of action for breach of the implied covenant of good faith and fair dealing is GRANTED.[7]

### III. LEAVE TO AMEND

When dismissing a complaint for failure to state a claim under Rule 12(b)(6), "a district court should grant leave to amend even if no request to amend the pleading was made, unless it

---

[6] A number of states have enacted laws requiring insurers to periodically search the Death Master File to independently determine whether their insureds have died. *See, e.g.,* N.Y. Ins. Law § 3240; N.M. Stat. Ann. § 59A-16-7.1; Mont. Code Ann. § 33-20-1605; Ky. Rev. Stat. Ann. § 304.15-420. However, California is not one of them. Under California law, life insurance proceeds "escheat to [the] state if unclaimed and unpaid for more than three years after the funds became due and payable as established from the records of the corporation." Cal. Civ. Proc. Code § 1515(a); *see also Yee v. Am. Nat'l Ins. Co.*, 235 Cal. App. 4th 453, 458 (2015). A life insurance policy that is not made due and payable by actual proof of death of the insured is considered due and payable when the insured "has attained, or would have attained if he or she were living, the limiting age under the mortality table on which the reserve is based," and there has been no contact with the insured or any other interested person for a three-year period. Cal. Civ. Proc. Code § 1515(c); *see also Yee*, 235 Cal. App. 4th at 457 n.2. Several courts, in addition to *Andrews*, have held that absent an applicable statutory requirement or contractual agreement, an insurer does not have an implied duty to check the Death Master File. *See Perdue v. Nationwide Life Ins. Co.*, No. 12-C-287 (W. Va. Cir. Ct. Dec. 27, 2013) ("Every court that has considered this issue has ruled that no implied duty arising from a life insurance policy imposes any obligation . . . to proactively search the [Death Master File] or other third-party database to determine whether an insured under an outstanding life insurance policy has died."), *cert. granted*, No. 14-0100; *Feingold*, 2013 WL 4495126, at *2-4 (dismissing consumer protection, unjust enrichment, conversion, and breach of fiduciary duty claims based on insurer's failure to check the Death Master File, where "both the insurance policy and state law allowed [the insurer] to hold the policy proceeds until [the plaintiff] provided proof of his mother's death").

[7] Because I find that Finley's breach of contract and breach of the implied covenant claims must be dismissed for the reasons stated above, I do not consider Transamerica's alternative argument that Finley lacks standing.

9

determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (internal quotation marks omitted).  It appears highly unlikely that Finley will be able to cure the deficiencies in either of his causes of action.  Nevertheless, given that he is a pro se litigant and has not yet amended his complaint, I am not ready to say that it is impossible.  Finley will have leave to amend.

In his opposition brief, Finley makes a series of arguments, not raised in his complaint, based on various laws concerning the disposition of unclaimed property.  *See* Opp. at 4-7.  Because Finley does not allege any claims under these laws and does not explain how they connect to his claims for breach of contract or breach of the implied covenant, I do not consider the arguments here.  Transamerica contends that any claims under the laws would be defective as a matter of law and that amending the complaint to include them would thus be futile.  Reply at 9-11.  Again, in light of Finley's pro se status and his lack of previous amendment, I will not preclude him from amending his complaint at this time.  If he decides to submit an amended complaint, he may include additional claims under the laws cited in his opposition brief, pages 4 through 7.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is GRANTED.  Finley shall file his amended complaint, if any, within thirty days of the date of this order.  If he does not do so, judgment will be entered in favor of Transamerica.

**IT IS SO ORDERED**.

Dated: June 25, 2015



WILLIAM H. ORRICK
United States District Judge