1

2

3

4                      UNITED STATES DISTRICT COURT

5                    NORTHERN DISTRICT OF CALIFORNIA

6

7   LINCOLN D. FINLEY,                    Case No. 15-cv-00678-WHO

          Plaintiff,
8                                         **ORDER GRANTING MOTION TO
      v.                                  DISMISS FIRST AMENDED
9                                         COMPLAINT**

10  TRANSAMERICA LIFE INSURANCE           Re: Dkt. No. 26
    COMPANY, et al.,
11           Defendants.

12                              **INTRODUCTION**

13         Pro se plaintiff Lincoln Finley accuses defendant Transamerica Premier Life Insurance

14  Company ("Transamerica") of failing to pay the life insurance policy benefit owed to his mother

15  upon his father's death, thereby breaching the terms of the policy and the implied covenant of

16  good faith and fair dealing.  Neither Finley nor his mother notified Transamerica of his father's

17  death, a condition precedent to Transamerica's obligation to pay the policy benefit.  Lacking such

18  notice, Transamerica escheated the policy proceeds to the California State Controller pursuant to

19  California's Unclaimed Property Law.  Finley has since obtained the proceeds from the Controller.

20         I dismissed Finley's original complaint for failure to state a claim.  His first amended

21  complaint ("FAC") largely repeats the same allegations as the original one and does not cure any

22  of its deficiencies.  Finley again fails to state a plausible claim for relief against Transamerica, and

23  I find that further amendment would be futile.  Accordingly, Transamerica's motion to dismiss is

24  GRANTED, and the FAC is DISMISSED WITHOUT LEAVE TO AMEND.

25                              **BACKGROUND**

26  **I.     FINLEY'S ORIGINAL COMPLAINT**

27         Finley filed his original complaint on February 13, 2015.  Dkt. No. 1 ("Compl.").  He

28  alleged that in 1964 Transamerica issued a life insurance policy listing his father as the insured

United States District Court
Northern District of California

United States District Court
Northern District of California

1   and his mother as the sole beneficiary.  Compl. ¶¶ 5-6, Ex. A; Puig Decl. Ex. A (Dkt. No. 13-1).[1]

2   He alleged that his mother "was not made aware" of the policy following his father's death in

3   1987 and did not receive the policy benefit.  Compl. ¶¶ 7, 15.  He also alleged that Transamerica

4   did not check the Social Security Death Index ("SSDI")[2] at the time of his father's death or at any

5   time thereafter.  *Id.* ¶ 7.

6          Finley stated that he became entitled to the benefits owed under his father's life insurance

7   policy when his mother died in 2004, but that when he contacted Transamerica in November 2014,

8   Transamerica refused to pay him.  *Id.* ¶¶ 9-11.  He stated that Transamerica had already

9   "submitted payment to [the] California State Controller," *id.* ¶ 9, meaning that Transamerica had

10  already escheated the policy proceeds to the state.[3]

11         On the basis of these allegations, Finley brought two state law causes of action against

12  _____

13  [1] Finley purported to attach to his original complaint a copy of the life insurance policy issued to
    his father.  Compl. ¶¶ 5-6, Ex. A.  Transamerica asserted, and Finley did not dispute, that the
    document attached to his original complaint was not in fact his father's policy, but rather his
14  father's policy application.  *See* Dkt. No. 12 at 5 n.4.  Transamerica submitted in conjunction with
    its motion to dismiss a document that it described as a "specimen copy" of the actual policy.  *See*
15  Puig Decl. ¶ 2, Ex. A (Dkt. Nos. 13, 13-1).  Transamerica stated that its "practice with regard to
    assumed business, such as the policy issued to [Finley's father], is to keep a specimen copy of the
16  policy form reflecting the terms and conditions of coverage offered under that policy rather than
    retaining each individual policy."  Puig Decl. ¶ 2 (Dkt. No. 13).  Finley did not dispute the
17  authenticity of the specimen copy, and I took judicial notice of it and considered it in resolving the
    motion to dismiss.  *See* Prior Order at 2 n.1; *see also Knievel v. ESPN*, 393 F.3d 1068, 1076-77
18  (9th Cir. 2005) (incorporation by reference doctrine extends "to situations in which the plaintiff's
    claim depends on the contents of a document, the defendant attaches the document to its motion to
19  dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff
    does not explicitly allege the contents of that document in the complaint"); *Feingold v. John
20  Hancock Life Ins. Co. (USA)*, No. 13-cv-10185, 2013 WL 4495126, at *2 (D. Mass. Aug. 19,
    2013) (taking judicial notice of specimen copy of life insurance policy referenced in plaintiff's
21  complaint, where policy was "central to his claims, and [he] has not disputed its authenticity").
    Transamerica again submits the specimen policy in connection with the instant motion to dismiss.
22  *See* Puig Decl. II ¶ 2, Ex. A (Dkt. No. 27).  Although Finley now attacks the specimen policy and
    accuses Transamerica of "withhold[ing] policy information that can establish the true benefits due
23  under the policy," Opp. at 3 (Dkt. Nos. 28, 31), as discussed in more detail below, he does not
    provide any reasonable basis for disregarding the specimen policy or finding it insufficient to
24  establish the relevant terms of his father's life insurance policy.  Accordingly, I will consider the
    specimen policy in resolving the instant motion.
25
    [2] The SSDI is also commonly referred to as the Death Master File ("DMF").
26
    [3] At oral argument on Transamerica's motion to dismiss the original complaint, Finley admitted
27  that he had already contacted the Controller regarding his father's life insurance policy, and that
    the Controller had since delivered to him the escheated funds.  *See* Prior Order at 6 n.4.
28

1    Transamerica: (1) breach of contract and (2) breach of the implied covenant of good faith and fair

2    dealing. *Id.* ¶¶ 13-23.

3           Transamerica moved to dismiss. Dkt. No. 12. Following oral argument, I issued an order

4    granting the motion and dismissing the original complaint with leave to amend. Dkt. No. 24

5    ("Prior Order"). I held that Finley failed to state a claim for breach of contract because he did not

6    allege that he or his mother or any other party had submitted "due proof of death" to

7    Transamerica, as required under the policy. Prior Order at 3-6. I also rejected each of the theories

8    Finley offered in support of the breach of the implied covenant cause of action. *Id.* at 7-9. I

9    observed that under California law, without a breach of the insurance policy, there can be no

10   breach of the implied covenant of good faith and fair dealing, and that Finley had not alleged facts

11   indicating that Transamerica had an affirmative duty to check the SSDI to identify deceased

12   insureds. *Id.*

13   **II.     FINLEY'S FIRST AMENDED COMPLAINT**

14          Finley filed the FAC on July 27, 2015. Dkt. No. 25. Like the original complaint, the FAC

15   brings only two causes of action, for breach of contract and breach of the implied covenant of

16   good faith and fair dealing under California law. *See* FAC ¶¶ 14-24. Its allegations are

17   substantially similar to those in the original complaint, although there are some differences.

18   Unlike the original complaint, the FAC alleges that Transamerica violated its duties under

19   (1) California Code of Civil Procedure § 1515, which is part of California's Unclaimed Property

20   Law, FAC ¶¶ 7, 9, 12, 16, 21-22; (2) unspecified provisions of the California Insurance Code, *id.*

21   ¶¶ 9, 16, 21-22; and (3) the "global resolution," *id.* ¶¶ 7, 9.

22          By the "global resolution," Finley appears to mean the Global Resolution Agreement

23   ("GRA"), an agreement between Transamerica and the California State Controller and other state

24   regulators that resolved an unclaimed property audit. The GRA includes an agreement by

25   Transamerica to "voluntarily perform comparisons of its electronic records against the Death

26

27

28

United States District Court
Northern District of California

1   Master File." GRA at p.2 (Puig Decl. II, Ex. B).[4]  It also includes section 4(xii), which provides

2   that "this Agreement shall not confer any rights upon any person or entities other than the parties

3   to it and is not intended to be used for any other purpose.  Nothing in the Agreement shall be

4   construed to provide any person or entity not a Party to this Agreement with any enforceable

5   rights or private rights of action.  Nor shall the Agreement be deemed to create any intended or

6   incidental third party beneficiaries, and the matters addressed herein shall remain within the sole

7   and exclusive jurisdiction of the Signatory States." *Id.* § 4(xii).  Similarly, section 4(x) provides

8   that the GRA may not be "cited, used, presented, or introduced in any action or proceeding as

9   proof of any wrongful conduct or liability on the part of the Company nor shall it be construed as,

10  offered as, used as, or deemed to be evidence or an admission or concession of any liability or

11  wrongdoing or violation of any applicable provision of law or regulation whatsoever by the

12  Company or as a waiver by the Company of any applicable legal or equitable defense." *Id.* § 4(x).

13        Finley also accuses Transamerica of failing to provide a complete copy of his father's life

14  insurance policy. *Id.* ¶ 10.  In his opposition brief, he argues that Transamerica has breached the

15  terms of the policy and has acted in bad faith by "withhold[ing] policy information that can

16  establish the true benefits due under the policy."  Opp. at 3.  He states that "[t]o provide a generic

17  document to the Court and then pass it off as a specimen policy is fraud upon the Court," because

18  "there are no specimen policies that tailor fit all insured." *Id.* at 4.

19                                    **LEGAL STANDARD**

20        Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain

21  statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in

22  order to "give the defendant fair notice of what the claim is and the grounds upon which it rests,"

23  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and alterations

24  omitted).

25

26

27  ───────────────
    [4] Transamerica submits a copy of the GRA in conjunction with its motion to dismiss.  *See* Puig
28  Decl. II ¶ 3, Ex. B.  The GRA is properly considered here under the incorporation by reference
    doctrine.  *See Knievel*, 393 F.3d at 1076-77.

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). While a complaint "need not contain detailed factual allegations" to survive a Rule 12(b)(6) motion, "it must plead enough facts to state a claim to relief that is plausible on its face." *Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009) (internal quotation marks and citations omitted). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

In considering whether a claim satisfies this standard, the court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marines Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins*, 568 F.3d at 1067 (internal quotation marks omitted). "[I]t is within [the court's] wheelhouse to reject, as implausible, allegations that are too speculative to warrant further factual development." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013).

## DISCUSSION

## I.      FIRST CAUSE OF ACTION: BREACH OF CONTRACT

The elements of a claim for breach of contract under California law are: (1) existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach. *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008); *accord Buschman v. Anesthesia Bus. Consultants LLC*, No. 13-cv-01787-EMC, 2014 WL 1911430, at *5 (N.D. Cal. May 13, 2014).

"An insurance policy is, fundamentally, a contract between the insurer and the insured;" accordingly, a court must "look to the language of that contract to determine the obligations which the parties have assumed." *Stein v. Int'l Ins. Co.*, 217 Cal. App. 3d 609, 613 (1990); *accord*

*Abifadel v. Cigna Ins. Co.*, 8 Cal. App. 4th 145, 159 (1992).  "Interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation."  *MacKinnon v. Truck Ins. Exch.*, 31 Cal.4th 635, 647 (2003).  Under California law, "the mutual intention of the parties at the time the contract is formed governs interpretation.  Such intent is to be inferred, if possible, solely from the written provisions of the contract."  *Id.* at 647-48 (internal quotation marks and citations omitted).  "The clear and explicit meaning of these provisions, interpreted in their ordinary and popular sense, unless used by the parties in a technical sense, or [unless] a special meaning is given to them by usage, controls judicial interpretation."  *Id.* (internal quotation marks and citations omitted).

Finley alleges that Transamerica breached the terms of his father's life insurance policy by "fail[ing] to pay the policy benefit upon the death of [his father] to [his mother] in 1987."  FAC ¶ 16.  In the Prior Order, I held that this theory failed to support a breach of contract claim because Finley had not alleged that his mother or anyone else had provided Transamerica with "due proof of death," as required under the terms of the policy.  *See* Prior Order at 3-6.

Nothing in the FAC or the parties' briefing changes this conclusion.  Finley's father's policy plainly states that Transamerica's obligation to pay the policy benefit arises only "upon receipt of due proof of death and upon surrender of this policy."  Puig Decl. II, Ex. A.  Finley still does not allege that his mother or anyone else provided Transamerica with "due proof of death."  To the contrary, he continues to allege that his mother did not learn of the policy during her lifetime and that he did not learn of it until around the time he contacted Transamerica in November 2014, by which time Transamerica had escheated the policy proceeds to the state.  *See* FAC ¶ 8; *see also* Compl. ¶¶ 7, 15.  These facts do not support a plausible inference that Transamerica breached the terms of the policy by failing to pay Finley's mother upon his father's death.

Finley attempts to avoid the policy's "due proof of death" requirement by attacking the specimen policy provided by Transamerica and accusing Transamerica of "withhold[ing] policy information that can establish the true benefits due under the policy."  Opp. at 3; *see also* FAC ¶ 10.  I previously took judicial notice of the specimen policy provided by Transamerica without

6

opposition from Finley, *see* Prior Order at 2 n.1, and he does not provide any reasonable basis for now disregarding the specimen policy or finding it insufficient to establish the relevant terms of his father's life insurance policy.  Transamerica submits a sworn declaration stating that its "practice with regard to assumed business, such as the policy issued to [Finley's father], is to keep a specimen copy of the policy form reflecting the terms and conditions of coverage offered under that policy rather than retaining each individual policy," and that the specimen policy it submits corresponds to the policy issued to Finley's father.  Puig Decl. II ¶ 2.  Finley offers no allegation or evidence that calls into question these statements.  Absent any evidence or even a plausible allegation that the actual terms of Finley's father's policy were different from those stated in the specimen policy, Finley's arguments regarding the specimen policy do not help his case.

## II.   SECOND CAUSE OF ACTION: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

"California law, like the law in most states, provides that a covenant of good faith and fair dealing is an implied term in every contract."  *Chodos v. West Publishing Co.*, 292 F.3d 992, 996 (9th Cir. 2002).  The implied covenant "imposes upon each party a duty of good faith and fair dealing in the performance of the contract such that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  *Storek & Storek, Inc. v. Citicorp Real Estate Inc.*, 100 Cal. App. 4th 44, 55 (2002).

Finley accuses Transamerica of breaching the implied covenant in a variety of ways, including by:

(1) misrepresenting to claimants unspecified facts regarding the provisions of its insurance policies, FAC ¶ 22(a);

(2) failing to promptly provide "a reasonable explanation of the basis relied on . . . for denial of a claim," *id.* ¶ 22(b);

(3) "[n]ot attempting in good faith to effectuate [the] prompt, fair, and equitable settlement of claims in which liability has become reasonabl[y] clear," *id.* ¶ 22(c);

(4) failing to "conform to the [unidentified] statutory laws that gover[n] insurance," *id.* ¶ 22(f);

United States District Court
Northern District of California

1    (5) "holding death proceeds beyond [their] maturity date" and "failing to repor[t] death

2    proceeds within the time limits" set by California Code of Civil Procedure § 1515, *id.* ¶¶ 22(d),

3    22(e); and

4         (6) failing to "follow [the] protocols" of the GRA, *id.* ¶ 7.

5         The first four of these theories are merely legal conclusions unsupported by any factual

6    allegations in the FAC; as such, they lack "sufficient factual matter, accepted as true, to state a

7    claim to relief that is plausible on its face."  *Ashcroft*, 556 U.S. at 678 (internal quotation marks

8    omitted).  To the extent that Finley means to base a breach of the implied covenant claim on

9    California Insurance Code § 381,[5] which he cites in his opposition brief, Opp. at 4, the claim fails

10   because he offers no authority indicating that Transamerica was required to maintain a copy of the

11   actual policy issued to his father for the approximately fifty years that passed between when the

12   policy was first issued and when Finley first contacted Transamerica regarding the policy.  *Cf.*

13   Cal. Ins. Code § 10508 ("records shall be maintained for a minimum period of five years

14   following the actual delivery of the insurance policy or contract to which each pertains").

15        The fifth theory runs into my holding in the Prior Order, i.e., that under California law,

16   without a breach of the insurance policy, there can be no breach of the implied covenant of good

17   faith and fair dealing.  *See* Prior Order at 7; *see also Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1,

18   36 (1995) ("a bad faith claim cannot be maintained unless policy benefits are due"); *Manzarek v.*

19   *St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1034 (9th Cir. 2008) ("California law is clear that

20   without a breach of the insurance contract, there can be no breach of the implied covenant of good

21   faith and fair dealing.").  As discussed above, Finley's allegations in the FAC, like those in his

22   original complaint, do not plausibly establish a breach of his father's life insurance policy.

23        The fifth theory also appears to be based on Transamerica's alleged failure to timely

24   escheat the proceeds of Finley's father's policy to the California State Controller.  Even assuming

25   that such a failure could support a claim for breach of the implied covenant, Finley has not

26

27   _____

28   [5] California Insurance Code § 381 provides that a policy shall specify, among other things, "[t]he
     parties between whom the contract is made," and "[t]he property or life insured."  Cal. Ins. Code §
     381.

United States District Court
Northern District of California

plausibly alleged that such a failure occurred here.  Under California Code of Civil Procedure §
1515, the statute cited by Finley, life insurance proceeds "escheat to [the] state if unclaimed and
unpaid for more than three years after the funds became due and payable as established from the
records of the corporation."  Cal. Civ. Proc. Code § 1515(a).  A life insurance policy that is not
made due and payable by actual proof of death of the insured is considered due and payable when
the insured "has attained, or would have attained if he or she were living, the limiting age under
the mortality table on which the reserve is based," and there has been no contact with the insured
or any other interested person for a three-year period.  Cal. Civ. Proc. Code § 1515(c); *see also
Yee v. Am. Nat'l Ins. Co.*, 235 Cal.App. 4th 453, 457 n.2 (2015).  The facts alleged in the FAC do
not indicate that these conditions were satisfied at any time before Transamerica escheated the
proceeds of Finley's father's policy to the state.

Finley's reliance on the GRA is also without merit.  The GRA does "not confer any rights
upon any person or entities other than the parties to it," and by its own terms it cannot "be
construed to provide any person or entity not a Party to [it] with any enforceable rights or private
rights of action."  GRA § 4(xii).  Nor does the GRA "create any intended or incidental third party
beneficiaries."  *Id.*  Moreover, the GRA may not be "cited, used, presented, or introduced in any
action or proceeding as proof of any wrongful conduct or liability on the part of the Company nor
shall it be construed as, offered as, used as, or deemed to be evidence or an admission or
concession of any liability or wrongdoing or violation of any applicable provision of law or
regulation whatsoever by the Company or as a waiver by the Company of any applicable legal or
equitable defense."  *Id.* § 4(x).  Finley cites no authority indicating that, despite these provisions,
the GRA may provide the basis for a breach of the implied covenant, breach of contract, or other
cause of action.  Transamerica's alleged failure to follow the protocols of the GRA does not
support a viable claim for relief.  *See Souza v. Westlands Water Dist.*, 135 Cal. App. 4th 879, 891
(2006) ("The test for determining whether a contract was made for the benefit of a third person is
whether an intent to benefit a third person appears from the terms of the contract.") (internal
quotation marks omitted); *see also Feingold v. John Hancock Life Ins. Co. (USA)*, 753 F.3d 55,
60-61 (1st Cir. 2014) (rejecting a similar attempt to use another GRA arising from another

United States District Court
Northern District of California

governmental unclaimed property audit to bolster common law claims based on the insurance provider's alleged failure to review the DMF; holding that there was no explicit language in the GRA that overcame the strong presumption against third-party beneficiaries, and that the plaintiff could not "circumvent the strong presumption against third-party beneficiaries . . . by recasting an alleged violation of the GRA as a common law claim").[6]

### CONCLUSION

Transamerica's motion to dismiss is GRANTED.  Because I find that further amendment would be futile, the FAC is DISMISSED WITHOUT LEAVE TO AMEND.  The Clerk shall close the file and enter judgment for Transamerica.

**IT IS SO ORDERED**.

Dated: November 9, 2015



WILLIAM H. ORRICK
United States District Judge

United States District Court
Northern District of California

---

[6] To the extent that Finley means to allege that Transamerica had a duty to review the DMF based on some authority other than the GRA, his claims still fail.  The FAC, like the original complaint, "alleges no plausible basis – either intrinsic or extrinsic to the policy – for implying this requirement."  Prior Order at 8; *see also id.* at 8 n.5, 9 n.6.